UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: FRESH AND PROCESS POTATOES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>Kansas Tag-Along Action Only.<br>*Associated Wholesale Grocers, Inc. v. United Potato Growers of America, Inc., et al.* | Case No. 4:10-MD-2186-BLW<br><br>MEMORANDUM DECISION AND ORDER |

The Court has before it Idahoan Foods LLC's Objections to Magistrate Judge's Order of July 17, 2015 (Dkt. 858). A District Judge has authority to review pretrial rulings by a Magistrate Judge under 28 U.S.C. § 636. Upon a party's timely objection to a Magistrate Judge's ruling, the District Judge may reverse the ruling if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(A).

Here, Idahoan Foods objects to Judge Dale's July 17, 2015 Order. Specifically, Idahoan Foods argues that Judge Dale erroneously sustained AWG's objections to 7 interrogatories. The Court has reviewed Judge Dale's Order and the parties' briefs, and determined that Judge Dale's decision was not clearly erroneous or contrary to law.

MEMORANDUM DECISION AND ORDER - 1

The dispute began when Idahoan filed a motion asking Judge Dale to compel AWG to "produce for deposition witnesses regarding the issues raised by AWG's belated production of spreadsheets concerning its purchases of dehydrated potato products from Idahoan Foods for a period of up to seven hours of deposition." Dkt. 819. Judge Dale found merit with the motion, but determined that a full day of depositions was an excessive means of remedying the issue. Instead, Judge Dale allowed Idahoan to propound 10 interrogatories and conduct an additional 3 hours of depositions to obtain the information. Dkt. 843. Idahoan propounded the interrogatories, but AWG objected to 7 of them. Judge Dale sustained those objections. Idahoan argues that was clearly erroneous or contrary to law.

Judge Dale concluded that the 7 interrogatories were not within the scope of her earlier Order allowing the interrogatories. In that earlier Order, Judge Dale noted that the dispute concerned spreadsheets produced by AWG, and that Idahoan sought information from witnesses who could testify about those spreadsheets. Judge Dale therefore limited discovery to "how the spreadsheets were created, who created them, the source of the data, and how the spreadsheets illustrate AWG's damage calculations and tend to prove its damage claims." Dkt. 843, p.3. The 3 interrogatories AWG answered were,

> 1. Identify any and all purchases of dehydrated potato products AWG made from any competitor of Idahoan Foods, including but not limited to Basic American, Betty Crocker, Pillsbury, Edward & Sons, Idaho Spuds, Hungry Jack or any private label produce, from January 1, 2004 to the present. Please note the definition of "identify" with respect to purchases set forth in the definitions above.

**MEMORANDUM DECISION AND ORDER - 2**

> 5. Identify any discounts, rebates, refunds or other credits received by AWG in connection with the purchases of dehydrated potato products from Idahoan Foods not reflected in the Idahoan Foods Sales Spreadsheets, from January 1, 2004 to the present.
>
> 8. For each of the purchases identified in the Idahoan Foods Sales Spreadsheets, state the price that the products purchased were resold to AWG's members or other customers and describe the manner in which such pricing was determined. If the same formula or calculation was applied by AWG for determining the resale price for all purchases or distinct groups of purchases, you may answer this Interrogatory with respect to those purchases by providing that formula or calculation.

The 7 interrogatories to which Judge Dale sustained the objections were,

> 2. Identify any and all purchases of dehydrated potato products AWG made from any competitor of Idahoan Foods, including but not limited to Basic American, Betty Crocker, Pillsbury, Edward & Sons, Idaho Spuds, Hungry Jack or any private label produce, from January 1, 2004 to the present. Please note the definition of "identify" with respect to purchases set forth in the definitions above.
>
> 3. Describe each and every fact, and identify all documents and communications, that you assert support any link, connection, causation, nexus, or association between any action of Idahoan Foods or any other Defendant that purportedly violated the Sherman Act or the Kansas Restraint of Trade Act and any increase in the price of dehydrated potato products purchased by AWG from Idahoan Foods from January 1, 2004 to the present.
>
> 4. Identify each and every communications between AWG and Idahoan Foods (including communications with any agent of Idahoan Foods) concerning any increase or decrease in the price of dehydrated potato products offered for sale by Idahoan Foods to AWG from January 1, 2004 to the present.
>
> 6. Identify all employees or agents of AWG or Idahoan Foods who have participated in any communications between AWG and Idahoan Foods (or its agents) related to the purchase, pricing, consideration for purchase or offer to sell dehydrated potato products from January 1, 2004 to the present.

**MEMORANDUM DECISION AND ORDER - 3**

> 7. Identify each and every occasion on which AWG decided not to purchase Idahoan Foods' dehydrated potato products because those products were higher priced than its competitors' products.
>
> 9. Identify each instance between January 1, 2004 and the present in which you claim Idahoan Foods purchased potatoes of a grade or quality not typically purchased by potato dehydrators or at a price that was not at or below market prices for potatoes used in the dehydration process.
>
> 10. Identify each occasion between January 1, 2004 and the present in which Idahoan Foods purchased potatoes from United II Potato Growers of Idaho, Inc. or any other person for the purpose of reducing the supply of potatoes to fresh customers or in which it purchased potatoes in excess of those needed for its production of dehydrated potato products.

Dkt. 858-4.

In sustaining the objections to those 7 interrogatories, Judge Dale explained that they went well beyond the category of limited discovery she had allowed in her earlier Order – that is, how the spreadsheets were created, who created them, the source of the data, and how the spreadsheets illustrate AWG's damage calculations and tend to prove its damage claims. Judge Dale's earlier Order was not an opportunity to re-open all fact discovery – it was limited to what was requested in the motion to compel. Judge Dale further explained that the 7 interrogatories went beyond the discovery necessary to determine whether the spreadsheets tend to prove AWG's damage claims, and that her intent in granting the motion to compel was to allow Idahoan to only ask questions regarding information contained in the spreadsheets, perhaps what was not contained in the spreadsheets, whether that information existed in some form, who compiled the information, and how it all relates to AWG's damage claim. Again, this was a discrete issue related only to the spreadsheets.

**MEMORANDUM DECISION AND ORDER - 4**

Judge Dale was correct to sustain the objections. The 7 interrogatories go well beyond the discreet issue of uncovering information regarding the spreadsheets – in fact, none of the 7 interrogatories even mention the spreadsheets. Moreover, the three interrogatories to which AWG responded, appear to cover the issues surrounding the spreadsheets. Thus, Judge Dale's interpretation of her Order allowing limited discovery regarding the spreadsheets was not clearly erroneous or contrary to law. Accordingly, the Court will overrule Idahoan's objection to her Order.

## ORDER

**IT IS HEREBY ORDERED:**

1. Idahoan Foods LLC's Objection to Magistrate Judge's Order of July 17, 2015, Dkt. 858 is **OVERRULED**.

DATED: September 16, 2015

B. Lynn Winmill
Chief Judge
United States District Court